UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| COX OPERATING, L.L.C. | CIVIL ACTION |
| VERSUS | NO. 21-728 |
| EXPEDITORS & PRODUCTION SERVICES COMPANY ET AL | SECTION: "H" |

## ORDER AND REASONS

Before the Court are Defendants Expeditors & Production Services Company and EPS Logistics, Inc.'s Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 19). For the following reasons, the Motion is **DENIED**.

## BACKGROUND

Plaintiff Cox Operating LLC ("Cox") owns and operates hydrocarbon-producing assets in the Gulf of Mexico on the outer Continental Shelf ("OCS"). In June of 2016, Cox and EPS Logistics, Inc. ("EPS Logistics") entered into a Master Services Agreement ("MSA") wherein EPS Logistics agreed to provide goods and services to Cox related to Cox's offshore operations. In relevant part, the MSA also provided that EPS Logistics would not assign or delegate its obligations or allow a third-party lien on Cox property. Plaintiff now alleges that, between February 22, 2021 and March 5, 2021, a separate entity—Expeditors & Production Service Company ("EPS Production")—filed 40 separate lien affidavits ("the Claimed Liens") in seven Louisiana parishes

1

pursuant to the Louisiana Oil Well Lien Act ("LOWLA").[1] In this action, Plaintiff contends that the liens filed by EPS Production are invalid as they are procedurally deficient, extinguished through the commingling of hydrocarbons, and related to services provided by EPS Logistics, not EPS Production. Plaintiff contends in the alternative that, in the event the liens are found valid and enforceable, EPS Logistics is liable to Plaintiff for defense and indemnity as well as damages arising from its bad faith breach of the non-delegation provisions of the MSA. On April 8, 2021, Plaintiff filed its Complaint in this Court against Defendants EPS Production and EPS Logistics (collectively, "Defendants") for gross and reckless negligence, bad faith breach of contract, indemnification, and declaratory and injunctive relief.

Now before the Court is Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction. In the Motion, Defendants refute Plaintiff's assertion that subject matter jurisdiction is proper in this Court pursuant to 43 U.S.C. §1349(b)(1)(A) of the Outer Continental Shelf Lands Act ("OCSLA"). Plaintiff opposes the Motion.

## **LEGAL STANDARD**

A Rule 12(b)(1) motion challenges the subject matter jurisdiction of a federal district court. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[2] In ruling on a Rule 12(b)(1) motion to dismiss, the court may rely on (1) the complaint alone, presuming the allegations to be true, (2) the complaint supplemented by undisputed facts, or (3) the complaint supplemented by undisputed facts and by the court's resolution of disputed

---

[1] LA. REV. STAT. § 9:4860, *et. seq*.
[2] Home Builders Ass'n of Miss., Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998).

facts.³ The proponent of federal court jurisdiction—in this case, the Plaintiff—bears the burden of establishing subject matter jurisdiction.⁴

## **LAW AND ANALYSIS**

Plaintiff's Complaint invokes subject matter jurisdiction under 43 U.S.C. § 1349(b)(1)(A) of OCSLA, which states in relevant part that:

> . . . the district courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection with (A) any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals . . .

In the instant Motion, Defendants argue that this suit does not fall within the scope of OCSLA's jurisdictional provision. Specifically, Defendants argue that courts have limited OCSLA's jurisdictional scope to disputes that intimately affect the flow, the development, or the efficient exploitation of natural resources on the OCS.⁵ As Plaintiff's suit arises out of liens asserted after work on the OCS was complete, Defendants characterize Plaintiff's claim as dealing exclusively with "after the fact" actions that cannot affect offshore productions. Defendants thus contend that § 1349(b)(1)(A) is inapplicable to this action and that this Court lacks subject matter jurisdiction.

In response, Plaintiff contends that the Fifth Circuit's interpretation of § 1349(b)(1)(A) is much broader than Defendants suggest, and subject matter jurisdiction typically exists under OCSLA where there exists any nexus between the dispute and the exploitation of resources on the OCS. Having

---

³ Den Norske Stats Oljesels kap As v. Heere MacVof, 241 F.3d 420, 424 (5th Cir. 2001).
⁴ *See* Physicians Hosps. of Am. v. Sebelius, 691 F.3d 649, 652 (5th Cir. 2012).
⁵ *See* Doc. 19-2 at 4.

3

reviewed the cases cited by the parties and the law of this Circuit, this Court agrees with Plaintiff that OCSLA affords jurisdiction in this case.

Congress passed the OCSLA "in 1953 to establish federal ownership and control over the mineral wealth of the OCS and to provide for the development of those natural resources."[6] In conformity with this purpose, § 1349(b)(1)(A) of OCSLA provides for original jurisdiction in the district courts for all cases arising out of or in connection with "operations on the OCS for the development of natural resources."[7] The Fifth Circuit has found that, through OCSLA's jurisdictional provision, "Congress intended for the 'judicial power of the United States to be extended to the entire range of legal disputes that it knew would arise relating to resource development on the Outer Continental Shelf.'"[8] Accordingly, "[t]he Fifth Circuit has interpreted [the language of § 1349(b)(1)(A)] as straightforward and broad."[9]

With this "broad" interpretation in mind, courts applying § 1349(b)(1)(A) often look to "whether (1) the activities that caused the injury constituted an 'operation' 'conducted on the outer Continental Shelf' that involved the exploration and production of minerals, and (2) the case 'arises out of, or in connection with' the operation."[10] The Court will analyze each inquiry in turn.

First, it is clear that the underlying activity in this case constitutes an operation conducted on the OCS. Although "operation" is not defined in the statute, the Fifth Circuit has held that "the term 'operation' contemplated the doing of some physical act on the OCS . . . [and also] the cessation of physical

---

[6] EP Operating Ltd. P'ship v. Placid Oil Co., 26 F.3d 563, 566 (5th Cir. 1994) (citing Gulf Offshore Co. v. Mobil Oil Corp., 453 U.S. 473, 480 n.7 (1981)).
[7] *Id.*
[8] Henry J. Ellender Heirs, LLC v. Exxon Mobil Corp., 42 F. Supp. 3d 812, 818 (E.D. La. 2014).
[9] In re DEEPWATER HORIZON, 745 F.3d 157, 163 (5th Cir. 2014) (citing Tenn. Gas Pipeline v. Hous. Cas. Ins. Co., 87 F.3d 150, 154 (5th Cir. 1996); *EP Operating Ltd. P'ship*, 26 F.3d at 569).
[10] *Id.* (citations omitted).

4

acts undertaken upon the OCS."[11] Here, the Court finds that Cox's hydrocarbon-producing operations in the OCS qualify as the type of physical activity governed by the statute.[12]

Second, the Court must decide whether this matter arises out of, or in connection with, the operation. As to this second prong, the Fifth Circuit requires only "but-for" causation—or whether the action would have arisen but for the operations on the OCS.[13] Under this liberal causation standard, the Fifth Circuit has found jurisdiction under § 1349(b)(1)(A) in a number of contract-related disputes even though the dispute is "one step removed from the actual transfer of minerals to shore."[14] For example, in *Amoco Production Company v. Sea Robin Pipeline Company*, the Fifth Circuit exercised jurisdiction over a case concerning take-or-pay rights in a contract for the purchase of natural gas, reasoning that the exercise of those rights necessarily had an impact on resource production.[15] Similarly, in *EP Operating Ltd. Partnership v. Placid Oil Co.*, the Circuit Court found jurisdiction over a partition action to determine ownership rights over dormant offshore facilities.[16] In so finding, the Court reasoned that the subject property "exist[s] solely to conduct operations on the OCS," that the determination of ownership rights would "facilitate the reuse, sale, or salvage of the offshore facilities," and

---

[11] *EP Operating Ltd. P'ship*, 26 F.3d 563, 567 (5th Cir. 1994).
[12] *See id.* at 568 ("That term does not stand alone, but rather it is used in conjunction with the terms 'exploration,' 'development,' and 'production.' Those terms are defined broadly in the statutes to encompass the full range of oil and gas activity from locating mineral resources through the construction, operation, servicing and maintenance of facilities to produce those resources." (citations omitted)).
[13] *In re DEEPWATER HORIZON*, 745 F.3d at 163–164.
[14] United Offshore Co. v. S. Deepwater Pipeline Co., 899 F.2d 405, 407 (5th Cir. 1990).
[15] 844 F.2d 1202, 1207 (5th Cir. 1988). *See also United Offshore Co.*, 8999 F.2d at 407 (applying the reasoning of *Amoco Prod. Co.* to find jurisdiction over a contractual dispute concerning the control of an entity that operates a gas pipeline).
[16] 26 F.3d 563.

these actions would in turn "affect the efficient exploration of resources from the OCS."[17]

In applying the relevant Fifth Circuit precedent to the matter at hand, the Court finds this contract dispute sufficiently connected to operations on the OCS. Plaintiff's claims in this matter primarily concern: (1) the legitimacy of the liens that EPS Production has asserted against Cox's operating interests on the OCS; and (2) EPS Logistics' obligations to Plaintiff under the MSA. As to Plaintiff's claims against EPS Production, Plaintiff has attached to its Complaint a letter from EPS Production notifying Cox that the Claimed Liens are filed against "several production platforms" in an attempt "to collect the balances due . . . for the provision of lease operating services to various production platforms in the Gulf of Mexico."[18] Thus, by EPS Production's own admission, these liens arise out of production-related services that EPS Production provided to Plaintiff on the OCS and encumber Cox's hydrocarbon-producing wells. The Court therefore finds these claims would not have arisen but for Cox's operations on the OCS.[19] As to Plaintiff's claims against EPS Logistics, the plain language of the MSA states that it governs the services EPS Logistics provides to Cox in connection with Cox's offshore mineral production.[20] Although Defendants assert that EPS Logistics only performed land-based services for Cox, § 1349(b)(1)(A) does not contain a situs

---

[17] *Id.* at 569, 570.

[18] Doc. 1-4 at 1.

[19] *See also* Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co., 671 F.3d 512, 513 (5th Cir. 2012) (finding jurisdiction over "contracts for the provision of services in connection with the removal of a toppled platform" on the OCS and associated lien-related claims under LOWLA).

[20] *See* Doc. 1-6 at 2 ("Company may employ Contractor from time to time in connection with the provision of Services for the operation or construction of properties for exploration for, or the development of production of natural gas and oil, or other minerals and/or the purchase or rental of Goods and Equipment.").

requirement.[21] Thus, as the parties would not have entered into the contract but for Cox's OCS operations, the Court finds that it also has jurisdiction over the MSA-related claims.[22]

In sum, the Court finds that Plaintiff's action falls within the "range of legal disputes" that Congress anticipated would arise in connection with OCS operations and to which this Court's jurisdiction extends under § 1349(b)(1)(A).[23] Defendants' Motion is accordingly denied.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **DENIED**.

New Orleans, Louisiana this 8th day of July, 2021.

_____
**JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE**

---

[21] *In re DEEPWATER HORIZON*, 745 F.3d at 164 ("Because federal jurisdiction exists for cases 'arising out of, or in connection with' OCS operations, 43 U.S.C. § 1349, the statute precludes an artificial limit based on situs and the Parishes' formulation conflicts with this court's but-for test.").

[22] The Court takes note that the Western District of Louisiana recently reached the same conclusion in a related case between the parties in this action. *See* EPS LOGISTICS CO., ET AL. v. COX OPERATING, L.L.C. No. 6:21-CV-01003, 2021 WL 2698209, at *3 (W.D. La. June 30, 2021).

[23] *EP Operating Ltd. P'ship*, 26 F.3d at 569.